# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:10–cv–01138–ESH

NOVARTIS AG et al v. KAPPOS
Assigned to: Judge Ellen S. Huvelle
Case in other court:  13–01160
Cause: 35:145 Patent Infringement

Date Filed: 07/06/2010
Date Terminated: 11/15/2012
Jury Demand: None
Nature of Suit: 830 Patent
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**NOVARTIS AG**                    represented by    **Daniel James Kelly**
MCCARTER &ENGLISH LLP
265 Franklin Street
Boston, MA 02110–2804
(617) 449–6526
Fax: (617) 326–3088
Email: dkelly@mccarter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark H. Anania**
MCCARTER &ENGLISH
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973)–848–5302
Fax: (973)–206–6768
Email: manania@mccarter.com
*ATTORNEY TO BE NOTICED*

**Scott S. Christie**
MCCARTER &ENGLISH
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 848–5388
Fax: (973) 297–3981
Email: schristie@mccarter.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NOVARTIS VACCINES AND**          represented by    **Daniel James Kelly**
**DIAGNOSTICS, INC.**                                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark H. Anania**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott S. Christie**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DANA–FARBER CANCER
INSTITUTE**
*11ca659*

represented by **Daniel James Kelly**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark H. Anania**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NOVARTIS CORPORATION**
*11ca0821*

represented by **Daniel James Kelly**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark H. Anania**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DAVID J. KAPPOS**
*Honorable, Under Secretary of
Commerce for Intellectual Property and
Director of the United States Patent and
Trademark Office*

represented by **Benjamin D.M. Wood**
U.S. PATENT OFFICE
600 Dulany Street
Madison West, 5th Floor
Alexandria, VA 22314
(571) 272–8745
Email: benjamin.wood@uspto.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Fred Elmore Haynes**
U.S. ATTORNEY'S OFFICE
555 4th Street, NW
Room E – 4110
Washington, DC 20530
(202) 514–7201
Fax: (202) 514–8780
Email: fred.haynes@usdoj.gov
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Mitchell P. Zeff**
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 514–7352
Fax: (202) 514–8780
Email: mitchell.zeff@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Carl Ezekiel Ross**
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 305–4851
Fax: (202) 514–8780
Email: carl.ross@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/06/2010 | 1 | | COMPLAINT against DAVID J. KAPPOS ( Filing fee $ 350, receipt number 4616030996) filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Civil Cover Sheet)(rdj) (Entered: 07/06/2010) |
| 07/06/2010 | | | SUMMONS (3) Issued as to DAVID J. KAPPOS, U.S. Attorney and U.S. Attorney General (rdj) (Entered: 07/06/2010) |
| 07/06/2010 | 2 | | NOTICE OF RELATED CASE by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. Case related to Case No. 09–1201 ; 09–1203. (rdj) (Entered: 07/06/2010) |
| 07/06/2010 | 3 | | LCvR 7.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by NOVARTIS AG identifying Corporate Parent NONE for NOVARTIS AG. (rdj) (Entered: 07/06/2010) |
| 07/07/2010 | 4 | | REPORT on the filing or determination of an action regarding patent and/or trademark number(s) 6,656,957; 6,878,721; 7,098,325; 7,112,673; 7,265,089; 7,348,353; 7,423,148; 7,470,709; 7,470,792; 7,534,890; 7,576,221. (znmw, ) (Entered: 07/07/2010) |
| 07/09/2010 | | | MINUTE ORDER. On or before 07/20/2010, the parties shall file a joint status report apprising the court as to the status of this case and addressing whether this matter should be stayed pending final disposition of the appeal of Wyeth and Elan Pharma Internat'l Ltd. v. Dudas, Civ. No. 07–1492. SO ORDERED. Signed by Judge Ricardo M. Urbina on 07/09/2010. (lcrmu1) (Entered: 07/09/2010) |

| 07/09/2010 | | | Set/Reset Deadlines: Joint Status Report due on or before 7/20/2010 (tg, ) (Entered: 07/09/2010) |
|---|---|---|---|
| 08/04/2010 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to DAVID J. KAPPOS served on 7/29/2010, answer due 9/27/2010. (Kelly, Daniel) (Entered: 08/04/2010) |
| 08/04/2010 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on Attorney General. Date of Service Upon Attorney General 07/29/2010. (Kelly, Daniel) Modified date of service on 8/5/2010 (znmw, ). (Entered: 08/04/2010) |
| 08/04/2010 | 7 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the US Attorney served on 8/3/2010, answer due 10/4/2010 (Kelly, Daniel) Modified dates on 8/5/2010 (znmw, ). (Entered: 08/04/2010) |
| 08/05/2010 | | | Set/Reset Deadlines: Answer due by 10/4/2010, (znmw, ) (Entered: 08/05/2010) |
| 09/28/2010 | 8 | | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by DAVID J. KAPPOS (Haynes, Fred) (Entered: 09/28/2010) |
| 10/04/2010 | | | MINUTE ORDER granting 8 the defendant's consent motion for an extension of time to answer or otherwise respond to the complaint, and the entire record herein. The defendant shall answer or otherwise respond to the complaint on or before October 14, 2010. SO ORDERED. Signed by Judge Ricardo M. Urbina on 10/4/10.(lcrmu1) (Entered: 10/04/2010) |
| 10/05/2010 | | | Set/Reset Deadlines: Answer to the Complaint due by 10/14/2010 (tg, ) (Entered: 10/05/2010) |
| 10/14/2010 | 9 | | ANSWER to 1 Complaint, by DAVID J. KAPPOS.(Haynes, Fred) (Entered: 10/14/2010) |
| 10/19/2010 | 10 | | STANDING ORDER signed by Judge Ricardo M. Urbina on 10/19/2010. Read the Standing Order carefully, it will govern this case. Failure to follow the Standing Order will result in sanctions. (tg, ) (Entered: 10/19/2010) |
| 11/10/2010 | | | MINUTE ORDER. The parties shall file a joint status report by 11/17/10 proposing dates to control this litigation and raising any other matters requiring the court's attention. SO ORDERED. Signed by Judge Ricardo M. Urbina on 11/10/10 (lcrmu1). (Entered: 11/10/2010) |
| 11/10/2010 | | | Set/Reset Deadlines: Joint Status Report due by 11/17/2010 (tg, ) (Entered: 11/10/2010) |
| 11/17/2010 | 11 | | MEET AND CONFER STATEMENT. (Kelly, Daniel) (Entered: 11/17/2010) |
| 12/21/2010 | | | NOTICE OF HEARING: An Initial Status Hearing is scheduled for 1/25/2011 at 11:15 A.M. in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 12/21/2010) |
| 01/18/2011 | 12 | | MOTION to Continue Status Hearing re Notice of Hearing by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Declaration Of Scott S. Christie, # 2 Text of Proposed Order)(Kelly, Daniel) Modified event title on 1/19/2011 (znmw, ). (Entered: 01/18/2011) |

| | | | |
|---|---|---|---|
| 01/18/2011 | 13 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Scott S. Christie, :Firm– McCarter &English, LLP, :Address– Four Gateway Center, 100 Mulberry St., Newark NJ 07102. Phone No. – 973–848–5388. Fax No. – 973–297–3981 by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Declaration of Scott S. Christie, # 2 Text of Proposed Order)(Kelly, Daniel) (Entered: 01/18/2011) |
| 01/19/2011 | | | MINUTE ORDER granting 12 the plaintiffs' consent motion to reschedule the initial status hearing to March 8, 2011 at 11:30 a.m. SO ORDERED. Signed by Judge Ricardo M. Urbina on 1/19/11.(lcrmu1) Modified event title on 1/19/2011 (znmw, ). (Entered: 01/19/2011) |
| 01/19/2011 | | | Set/Reset Deadlines/Hearings: Initial Status Hearing RESCHEDULED for 3/8/2011 at 11:30 A.M. in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 01/19/2011) |
| 01/25/2011 | | | MINUTE ORDER granting 13 Attorney Scott Christie's motion to appear pro hac vice on the plaintiff's behalf. SO ORDERED. Signed by Judge Ricardo M. Urbina on 1/25/11. (lcrmu1) (Entered: 01/25/2011) |
| 03/08/2011 | | | Minute Entry for proceedings held before Judge Ricardo M. Urbina: Initial Status Hearing held on 3/8/2011. Motions to amend or join parties due by 4/7/2011. Proponent's Rule 26(a)(2)(B) Statement due by 5/6/2011. Opponent's Rule 26(a)(2)(B) Statement due by 6/3/2011. Discovery due by 6/15/2011. Dispositive Motions due by 8/15/2011. Oppositions to Dispositive Motions due by 9/15/2011. Replies to Oppositions to Dispositive Motions due by 9/20/2011. An Interim Status Hearing is scheduled for 8/11/2011 at 11:00 AM in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (Court Reporter Wendy Ricard.) (tg, ) (Entered: 03/08/2011) |
| 03/28/2011 | 14 | | NOTICE of Appearance by Benjamin D.M. Wood on behalf of DAVID J. KAPPOS (Wood, Benjamin) (Entered: 03/28/2011) |
| 04/04/2011 | | | MINUTE ORDER. The interim status conference currently scheduled for 8/11/2011 is VACATED and RESCHEDULED for 8/1/2011 at 11:00 a.m. SO ORDERED. Signed by Judge Ricardo M. Urbina on 4/4/11.(lcrmu1) Modified on 4/4/2011 to edit date (tg, ). (Entered: 04/04/2011) |
| 04/04/2011 | | | Set/Reset Hearings: Interim status hearing RESCHEDULED for 8/1/2011 at 11:00 AM in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 04/04/2011) |
| 04/07/2011 | 15 | | Consent MOTION for Leave to File *Amended Complaint* by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Text of Proposed Order, # 2 Proposed First Amended Complaint, # 3 Ex A, # 4 Ex B, # 5 Ex C, # 6 Ex D, # 7 Ex E, # 8 Ex F Part 1, # 9 Ex F Part 2, # 10 Ex G, # 11 Ex H Part 1, # 12 Ex H Part 2, # 13 Ex I Part 1, # 14 Ex I Part 2, # 15 Ex I Part 3, # 16 Ex I Part 4, # 17 Ex I Part 5, # 18 Ex I Part 6, # 19 Ex I Part 7, # 20 Ex I Part 8, # 21 Ex I Part 9, # 22 Ex J, # 23 Ex K, # 24 Ex L Part 1, # 25 Ex L Part 2, # 26 Ex L Part 3, # 27 Ex L Part 4, # 28 Ex L Part 5)(Kelly, Daniel) (Entered: 04/07/2011) |
| 04/08/2011 | | | MINUTE ORDER granting 15 the plaintiff's consent motion for leave to file an amended complaint. SO ORDERED. Signed by Judge Ricardo M. Urbina on 4/8/11.(lcrmu1) (Entered: 04/08/2011) |

| | | | |
|---|---|---|---|
| 04/08/2011 | 16 | | FIRST AMENDED COMPLAINT against DAVID J. KAPPOS filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F–Part 1, # 7 Exhibit F–Part 2, # 8 Exhibit G, # 9 Exhibit H–Part 1, # 10 Exhibit H–Part 2, # 11 Exhibit I–Part 1, # 12 Exhibit I–Part 2, # 13 Exhibit I–Part 3, # 14 Exhibit I–Part 4, # 15 Exhibit I–Part 5, # 16 Exhibit I–Part 6, # 17 Exhibit I–Part 7, # 18 Exhibit I–Part 8, # 19 Exhibit I–Part 9, # 20 Exhibit J, # 21 Exhibit K, # 22 Exhibit L–Part 1, # 23 Exhibit L–Part 2, # 24 Exhibit L–Part 3, # 25 Exhibit L–Part 4, # 26 Exhibit L–Part 5)(znmw, ) (Entered: 04/11/2011) |
| 04/22/2011 | 17 | | ANSWER to 16 Amended Complaint,, by DAVID J. KAPPOS. Related document: 16 Amended Complaint,, filed by NOVARTIS VACCINES AND DIAGNOSTICS, INC., NOVARTIS AG.(Haynes, Fred) (Entered: 04/22/2011) |
| 05/04/2011 | 18 | | Consent MOTION for Extension of Time to Complete Discovery *and Other Deadlines Set by March 8, 2011 Minute Entry* by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Text of Proposed Order)(Kelly, Daniel) (Entered: 05/04/2011) |
| 05/05/2011 | | | MINUTE ORDER granting the plaintiffs' 18 consent motion for extension of time to complete discovery. It is hereby ordered that the plaintiffs' consent motion for extension of time to complete discovery is granted; and it is further ordered that any opponent's rule 26(a)(2)(B) statement is due on or before August 2, 2011, discovery closes August 15, 2011, dispositive motions are due on or before October 15, 2011, oppositions to dispositive motions are due on or before November 14, 2011 and replies to oppositions to dispositive motions are due on or before November 21, 2011. An interim status hearing is scheduled for August 18, 2011 at 11:00 a.m. Signed by Judge Ricardo M. Urbina on 5/5/2011. (lcrmu2) (Entered: 05/05/2011) |
| 05/06/2011 | | | Set/Reset Deadlines/Hearings: Opponent's rule 26(a)(2)(B)statement due by 8/2/2011. Discovery due by 8/15/2011. Dispositive motions due by 10/15/2011. Oppositions to dispositive motions due by 11/14/2011. Replies to oppositions to dispositive motions due by 11/21/2011. An interim status hearing is scheduled for 8/18/2011 at 11:00 AM in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 05/06/2011) |
| 06/23/2011 | 19 | | Consent MOTION for Extension of Time to Complete Discovery *and Other Deadlines* by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Text of Proposed Order)(Kelly, Daniel) (Entered: 06/23/2011) |
| 06/24/2011 | | | MINUTE ORDER granting 19 the plaintiffs' consent motion for extension of time to complete discovery. The Opponent's Rule 26(a)(2)(B) Statement due by 09/15/2011; Discovery due by 10/03/2011; Dispositive Motions due by 12/16/2011; Oppositions to Dispositive Motions due by 02/17/2012; Replies to Oppositions to Dispositive Motions due by 03/16/2012; and an Interim Status Hearing is scheduled for November 1, 2011 at 11:00 a.m. SO ORDERED. Signed by Judge Ricardo M. Urbina on 6/24/11. (lcrmu1, ) (Entered: 06/24/2011) |

| | | | |
|---|---|---|---|
| 06/24/2011 | | | Set/Reset Deadlines/Hearings: Opponent's Rule 26(a)(2)(B) Statement due by 9/15/2011. Discovery due by 10/3/2011. Dispositive Motions due by 12/16/2011. Oppositions to Dispositive Motions due by 2/17/2011. Replies to Oppositions to Dispositive Motions due by 3/16/2011. An Interim Status Hearing is scheduled for 11/1/2011 at 11:00 AM in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 06/24/2011) |
| 06/27/2011 | | | MINUTE ORDER. It is hereby ordered that the interim status hearing scheduled for 8/18/2011 is VACATED in light of the minute order entered on 6/24/11. SO ORDERED. Signed by Judge Ricardo M. Urbina on 6/27/11. (lcrmu1) (Entered: 06/27/2011) |
| 09/27/2011 | 20 | | Consent MOTION for Extension of Time to Complete Discovery by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Text of Proposed Order)(Kelly, Daniel) (Entered: 09/27/2011) |
| 09/27/2011 | | | MINUTE ORDER granting 20 the plaintiff's consent motion for Extension of Time to Complete Discovery. Discovery is due by 12/2/11. Dispositive Motions are due by 2/14/12. Oppositions are due by 4/17/12. replies are due by 5/12/12. The currently scheduled status hearing is VACATED and RESCHEDULED to 2/2/12 at 9:45 a.m. SO ORDERED. Signed by Judge Ricardo M. Urbina on 9/27/11.(lcrmu1). Modified date on 9/28/2011 (tg, ). (Entered: 09/27/2011) |
| 09/27/2011 | | | Set/Reset Deadlines/Hearings: Discovery due by 12/2/2011. Dispositive Motions due by 2/14/2012. Oppositions to Dispositive Motions due by 4/17/2012. Replies to Oppositions to Dispositive Motions due by 5/12/2012. Status Hearing RESCHEDULED to 2/2/2012 AT 9:45 AM in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 09/28/2011) |
| 11/28/2011 | 21 | | Consent MOTION for Extension of Time to Complete Discovery by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Text of Proposed Order)(Kelly, Daniel) (Entered: 11/28/2011) |
| 11/29/2011 | | | MINUTE ORDER granting 21 the plaintiffs' consent motion for an extension of time to complete discovery. Discovery is due by January 31, 2012. Dispositive motions shall be filed by April 16, 2012; oppositions are due by June 18, 2012; replies are due by July 18, 2012. An interim status conference is scheduled for March 22, 2012 at 11:30 a.m. Signed by Judge Ricardo M. Urbina on 11/29/11.(lcrmu1) (Entered: 11/29/2011) |
| 11/29/2011 | | | Set/Reset Deadlines/Hearings: Discovery due by 1/31/2012. Dispositive Motions due by 4/16/2012; Oppositions to Dispositive Motions due by 6/18/2012; Replies to Oppositions to Dispositive Motions due by 7/18/2012. An Interim Status Hearing is scheduled for 3/22/2012 at 11:30 AM in Courtroom 30, Annex Building, Sixth Floor, before Judge Ricardo M. Urbina. (tg, ) (Entered: 11/30/2011) |
| 02/15/2012 | 22 | | Case reassigned by consent to Judge Ellen S. Huvelle. Judge Ricardo M. Urbina no longer assigned to the case. (gt, ) (Entered: 02/15/2012) |

| 02/16/2012 | | | MINUTE ORDER: In light of the status report filed in Novartis AG v. Kappos, 11cv0659 (Feb. 10, 2012) [Dkt. No. 18], three additional related cases have been transferred to the undersigned: Novartis AG v. Kappos, 10cv1138; Novartis AG v. Doll, 09cv1203; and Novartis AG v. Kappos, 11cv0821. Based on the common questions of law in these matters, it is hereby ORDERED that all four above–referenced cases are CONSOLIDATED pursuant to Federal Rule of Civil Procedure 42(a)(2); it is further ORDERED that all filings in this consolidated matter shall be made only in Docket No. 10cv1138; it is further ORDERED that the Clerk is directed to close 11cv0659, 09cv1203, and 11cv0821; and it is further ORDERED that the parties shall confer and propose a briefing schedule for these consolidated cases by March 2, 2012. SO ORDERED. Signed by Judge Ellen S. Huvelle on February 16, 2012.(AG) (Entered: 02/16/2012) |
| 02/17/2012 | | | Set/Reset Deadlines: Briefing Schedule due by 3/2/2012. (gdf) (Entered: 02/17/2012) |
| 03/02/2012 | 23 | | MOTION for Briefing Schedule filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. (Kelly, Daniel) Modified event title on 3/5/2012 (znmw, ). (Entered: 03/02/2012) |
| 03/02/2012 | 24 | | MOTION for Scheduling Order by DAVID J. KAPPOS (Attachments: # 1 Text of Proposed Order)(Haynes, Fred) (Entered: 03/02/2012) |
| 03/05/2012 | | | MINUTE ORDER re 24 MOTION for Scheduling Order: it is hereby ORDERED that a Status Conference in the above–captioned matter and all consolidated cases is set for March 12, 2012, at 10 a.m. in Courtroom 23A. Signed by Judge Ellen S. Huvelle on March 5, 2012.(AG) (Entered: 03/05/2012) |
| 03/05/2012 | | | Set/Reset Hearings: Status Conference set for 3/12/2012 AT 10:00 AM in Courtroom 23A before Judge Ellen S. Huvelle. (gdf) (Entered: 03/05/2012) |
| 03/12/2012 | | | Minute Entry for proceedings held before Judge Ellen S. Huvelle: Status Conference held on 3/12/2012. Scheduling order to be entered. (Court Reporter Chantal Geneus) (gdf) (Entered: 03/12/2012) |
| 03/12/2012 | 25 | | ORDER granting 24 Motion for Scheduling Order; Administrative Record due by 5/1/2012; Amended Pleadings due by 3/22/2012. Plaintiff's motion by 5/16/12; Defendant's motion and opposition to Plaintiffs' motion by 6/18/12; Plaintiffs' opposition and reply to Defendant's opposition by 7/18/12; Defendant's reply to Plantiffs' opposition by 8/18/12. Signed by Judge Ellen S. Huvelle on 3/12/12. (See order for detail) (gdf) (Entered: 03/12/2012) |
| 03/22/2012 | 26 | | MOTION for Leave to File *Amended Complaints* by NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 First Amended Complaint in Civil Action No. 11–cv–00821, # 2 Exhibit A to First Amended Complaint, # 3 Exhibit B to First Amended Complaint, # 4 Exhibit C to First Amended Complaint, # 5 Exhibit D to First Amended Complaint, # 6 Exhibit E to First Amended Complaint, # 7 Exhibit F to First Amended Complaint, # 8 Exhibit G to First Amended Complaint, # 9 Exhibit H to First Amended Complaint, # 10 Exhibit I to First Amended Complaint, # 11 Exhibit J to First Amended Complaint, # 12 Second Amended Complaint in Civil Action No. 10–cv–1138, # 13 Exhibit A to Second Amended Complaint, # 14 Exhibit B |

| | | | |
|---|---|---|---|
| | | | to Second Amended Complaint, #15 Exhibit C to Second Amended Complaint, #16 Exhibit D to Second Amended Complaint, #17 Exhibit E to Second Amended Complaint, #18 Exhibit F to Second Amended Complaint, #19 Exhibit G to Second Amended Complaint, #20 Exhibit H to Second Amended Complaint, #21 Exhibit I (Part 1 of 2) to Second Amended Complaint, #22 Exhibit I (Part 2 of 2) to Second Amended Complaint, #23 Exhibit J to Second Amended Complaint, #24 Exhibit K to Second Amended Complaint, #25 Exhibit L to Second Amended Complaint, #26 Text of Proposed Order)(Kelly, Daniel) (Entered: 03/22/2012) |
| 04/09/2012 | 27 | | RESPONSE re 26 MOTION for Leave to File *Amended Complaints* filed by DAVID J. KAPPOS. (Ross, Carl) (Entered: 04/09/2012) |
| 04/09/2012 | | | MINUTE ORDER granting 26 Unopposed Motion for Leave to File Amended Complaint. Signed by Judge Ellen S. Huvelle on April 9, 2012. (AG) (Entered: 04/09/2012) |
| 04/09/2012 | 28 | | SECOND AMENDED COMPLAINT against DAVID J. KAPPOS filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC., NOVARTIS CORPORATION. (See Docket Entry 26 to view exhibits)(jf, ) (Entered: 04/10/2012) |
| 04/09/2012 | 29 | | NOTICE of First Amended Complaint (11ca0821) by NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (See Docket Entry 26 to view exhibits (jf, ) (Entered: 04/10/2012) |
| 04/12/2012 | 30 | | ANSWER to 28 Amended Complaint *(Second Amended Complaint)* by DAVID J. KAPPOS. Related document: 28 Amended Complaint filed by NOVARTIS VACCINES AND DIAGNOSTICS, INC., NOVARTIS AG, NOVARTIS CORPORATION.(Haynes, Fred) (Entered: 04/12/2012) |
| 04/19/2012 | 31 | | ANSWER to Complaint *Defendant's Answer to First Amended Complaint (11−cv−821)* by DAVID J. KAPPOS.(Ross, Carl) (Entered: 04/19/2012) |
| 04/23/2012 | 32 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Mark H. Anania, :Firm− McCarter &English, LLP, :Address− Four Gateway Center, 100 Mulberry Street, Newark, NJ 07102. Phone No. − (973) 848−5302. Fax No. − (973) 206−6768 by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: #1 Declaration of Mark H. Anania in Support of Pro Hac Vice Application, #2 Text of Proposed Order)(Kelly, Daniel) (Entered: 04/23/2012) |
| 04/23/2012 | 33 | | Unopposed MOTION for Leave to File Excess Pages *and Consent Motion to Extend Deadline to File Administrative Record* by DANA−FARBER CANCER INSTITUTE, NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: #1 Proposed Order)(Kelly, Daniel). Added MOTION for Extension of Time to on 4/24/2012 (jf, ). (Entered: 04/23/2012) |
| 04/24/2012 | | | MINUTE ORDER granting 32 Motion for Leave to Appear Pro Hac Vice: Upon consideration of the Motion for Admission Pro Hac Vice of Mark H. Anania, Esq. in the above−captioned action, it is hereby ORDERED that the Motion is GRANTED. Mr. Anania is hereby admitted pro hac vice to appear and practice in this Court in the above−captioned action as counsel for |

| | | | |
|---|---|---|---|
| | | | Plaintiffs in the above–captioned consolidated cases. Signed by Judge Ellen S. Huvelle on April 24, 2012. (AG) (Entered: 04/24/2012) |
| 04/27/2012 | | | MINUTE ORDER granting in part and denying in part 33 plaintiffs' Motion for Leave to File Excess Pages; granting 33 Motion for Extension of Time to file the Administrative Record: Upon consideration of plaintiff's motion and the entire record herein, it is hereby ORDERED that plaintiffs' motion is granted in part and denied in part; it is further ORDERED that the page limit for plaintiffs' opening brief in support of their motion for summary judgment is extended to sixty (60) pages and the page limit for plaintiffs' reply is extended to thirty (30) pages; and it is further ORDERED that the deadline for the parties to jointly file the administrative record is extended to September 7, 2012. Signed by Judge Ellen S. Huvelle on April 27, 2012. (AG) (Entered: 04/27/2012) |
| 05/10/2012 | 34 | | Mail Returned as undeliverable. sent to Mark Anania; Type of Document Returned: Minute Order entered 4/27/12;. (clv, ) (Entered: 05/10/2012) |
| 05/16/2012 | 35 | | MOTION for Summary Judgment by NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Memorandum in Support, # 2 Appendix A, # 3 Appendix B, # 4 Text of Proposed Order)(Kelly, Daniel) (Entered: 05/16/2012) |
| 06/14/2012 | 36 | | MOTION for Leave to File Excess Pages by DAVID J. KAPPOS (Attachments: # 1 Text of Proposed Order)(Zeff, Mitchell) (Entered: 06/14/2012) |
| 06/15/2012 | 37 | | RESPONSE re 36 MOTION for Leave to File Excess Pages filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. (Attachments: # 1 Declaration of Scott S. Christie)(Kelly, Daniel) (Entered: 06/15/2012) |
| 06/18/2012 | 38 | | Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* by DAVID J. KAPPOS (Attachments: # 1 Text of Proposed Order)(Zeff, Mitchell) (Entered: 06/18/2012) |
| 06/18/2012 | 39 | | Memorandum in opposition to re 35 MOTION for Summary Judgment *and Cross Motion for Summary Judgment* filed by DAVID J. KAPPOS. (Attachments: # 1 Text of Proposed Order)(Zeff, Mitchell) (Entered: 06/18/2012) |
| 06/18/2012 | | | MINUTE ORDER granting 36 defendant' Motion for Leave to File Excess Pages. Signed by Judge Ellen S. Huvelle on June 18, 2012.(AG) (Entered: 06/18/2012) |
| 07/18/2012 | 40 | | REPLY to opposition to motion re 35 MOTION for Summary Judgment filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. (Kelly, Daniel) Modified on 7/19/2012 to correct docket link (jf, ). (Entered: 07/18/2012) |
| 07/18/2012 | 41 | | Memorandum in opposition to re 38 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment* filed by NOVARTIS AG, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. (Kelly, Daniel) (Entered: 07/18/2012) |
| 08/20/2012 | 42 | | |

| | | | |
|---|---|---|---|
| | | | REPLY *to Plaintiff's Opposition and in Further Support of Defendant's* 38 *Cross–Motion for Summary Judgment* filed by DAVID J. KAPPOS. (Zeff, Mitchell) Modified on 8/20/2012 (jf, ). (Entered: 08/20/2012) |
| 09/07/2012 | 43 | | NOTICE *JOINT APPENDIX TO MOTIONS FOR SUMAMRY JUDGMENT* by DANA–FARBER CANCER INSTITUTE, NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. re 39 Memorandum in Opposition, 35 MOTION for Summary Judgment, 38 Cross MOTION for Summary Judgment *and Opposition to Plaintiffs' Motion for Summary Judgment*, 41 Memorandum in Opposition (Attachments: # 1 Appendix Part 1, # 2 Appendix Part 2)(Kelly, Daniel) (Entered: 09/07/2012) |
| 09/07/2012 | 44 | | MOTION for Extension of Time to File Administrative Record by DAVID J. KAPPOS (Attachments: # 1 Text of Proposed Order)(znmw, ) (Entered: 09/10/2012) |
| 09/10/2012 | | | MINUTE ORDER: It is hereby ORDERED that 44 Defendant's Motion for Extension of Time to File Administrative Record is GRANTED; it is further ORDERED that the parties shall have until September 14, 2012 to jointly file the administrative record. Signed by Judge Ellen S. Huvelle on September 10, 2012. (lcesh2) (Entered: 09/10/2012) |
| 09/10/2012 | | | Set/Reset Deadlines: Administrative Record due by 9/14/2012. (gdf) (Entered: 09/10/2012) |
| 09/14/2012 | 45 | | ADMINISTRATIVE RECORD *(Joint Notice of Filing)* by DAVID J. KAPPOS. (Zeff, Mitchell) (Entered: 09/14/2012) |
| 09/14/2012 | 46 | | LARGE ADDITIONAL ATTACHMENT(S) by DAVID J. KAPPOS 45 Administrative Record filed by DAVID J. KAPPOS. (Attachments: # 1 Part 2 of 6, # 2 Part 3 of 6, # 3 Part 4 of 6, # 4 Part 5 of 6, # 5 Part 6 of 6)(rdj) (Entered: 09/17/2012) |
| 10/18/2012 | 47 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DANA–FARBER CANCER INSTITUTE, NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Ex. A, # 2 Ex. B)(Kelly, Daniel) (Entered: 10/18/2012) |
| 11/09/2012 | 48 | | NOTICE OF SUPPLEMENTAL AUTHORITY by DANA–FARBER CANCER INSTITUTE, NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kelly, Daniel) (Entered: 11/09/2012) |
| 11/13/2012 | | | NOTICE OF ERROR re 48 NOTICE OF SUPPLEMENTAL AUTHORITY; emailed to dkelly@mccarter.com, cc'd 8 associated attorneys –– The PDF file you docketed contained errors: 1. Invalid attorney signature, 2. Do not refile document. FYI, the filing attorney's signature must be on the on the filing document. (td, ) (Entered: 11/13/2012) |
| 11/15/2012 | 49 | 16 | MEMORANDUM AND OPINION. Signed by Judge Ellen S. Huvelle on November 15, 2012. (lcesh2) (Entered: 11/15/2012) |
| 11/15/2012 | 50 | 44 | ORDER granting in part and denying in part 35 plaintiffs' Motion for Summary Judgment; granting in part and denying in part 38 defendant's Motion for Summary Judgment. Signed by Judge Ellen S. Huvelle on November 15, 2012.(lcesh2) (Entered: 11/15/2012) |

| 11/30/2012 | 51 | | FINAL REPORT on the filing or determination of an action regarding a patent and/or trademark. (znmw, ) (Entered: 11/30/2012) |
|---|---|---|---|
| 01/11/2013 | 52 | | ENTERED IN ERROR.....NOTICE *OF APPEAL* by NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC. re 49 Memorandum &Opinion, 50 Order on Motion for Summary Judgment, (Kelly, Daniel) Modified on 1/13/2013 (jf, ). (Entered: 01/11/2013) |
| 01/13/2013 | | | NOTICE OF CORRECTED DOCKET ENTRY: re 52 Notice (Other) was entered in error and counsel was instructed to refile said pleading using the Appeal category to file Notice of Appeal to the Federal Circuit. (jf, ) (Entered: 01/13/2013) |
| 01/13/2013 | 53 | | NOTICE OF APPEAL TO THE FEDERAL CIRCUIT by NOVARTIS AG, NOVARTIS CORPORATION, NOVARTIS VACCINES AND DIAGNOSTICS, INC.. Filing fee $ 455, receipt number 0090–3185922. Fee Status: Fee Paid. Parties have been notified. (Kelly, Daniel) (Entered: 01/13/2013) |
| 01/14/2013 | 54 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals for the Federal Circuit. The Court of Appeals fee was paid this date re 53 Notice of Appeal to the Federal Circuit. (jf, ) (Entered: 01/14/2013) |
| 01/15/2013 | 55 | | USCA Case Number 13–1160 for 53 Notice of Appeal to the Federal Circuit filed by NOVARTIS VACCINES AND DIAGNOSTICS, INC., NOVARTIS AG, NOVARTIS CORPORATION. (jf, ) (jf, ). (Entered: 01/15/2013) |
| 01/16/2013 | 56 | | ENTERED IN ERROR.....NOTICE *of Appeal* by DAVID J. KAPPOS (Zeff, Mitchell) Modified on 1/16/2013 (jf, ). (Entered: 01/16/2013) |
| 01/16/2013 | | | NOTICE OF CORRECTED DOCKET ENTRY: Document No. re 56 Notice of Appeal was entered in error and counsel was instructed to refile said pleading using the correct event. (jf, ) (Entered: 01/16/2013) |
| 01/16/2013 | 57 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 50 Order on Motion for Summary Judgment, by DAVID J. KAPPOS. Fee Status: No Fee Paid. Parties have been notified. (Zeff, Mitchell) (Entered: 01/16/2013) |
| 01/17/2013 | 58 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the fee was an Appeal by the Government re 57 Notice of Appeal to DC Circuit Court. (jf, ) (Entered: 01/17/2013) |
| 01/17/2013 | 59 | | ENTERED IN ERROR.....NOTICE OF CROSS APPEAL as to 50 Order on Motion for Summary Judgment, by DAVID J. KAPPOS. Fee Status: No Fee Paid. Parties have been notified. (Zeff, Mitchell) Modified on 1/18/2013 (jf, ). (Entered: 01/17/2013) |
| 01/22/2013 | 60 | 13 | NOTICE OF APPEAL TO THE FEDERAL CIRCUIT as to 50 Order on Motion for Summary Judgment, by DAVID J. KAPPOS. Fee Status: No Fee Paid. Parties have been notified. (Zeff, Mitchell) (Entered: 01/22/2013) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NOVARTIS AG | |
| and | |
| NOVARTIS VACCINES AND DIAGNOSTICS, INC., | Civil Action No. 10-01138 (ESH) |
| Plaintiffs, | (Consolidated) |
| v. | |
| HON. DAVID J. KAPPOS, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, | |
| Defendant. | |

### CORRECTED NOTICE OF APPEAL[1]

Notice is hereby given that the Honorable David J. Kappos, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("Director" or "USPTO"), hereby cross appeals to the United States Court of Appeals for the Federal Circuit from the final judgment (a partial summary judgment in favor of plaintiff, and partial summary judgment in favor of defendant) on the request for continued examination (RCE) issue entered in this action on the 15h day of November, 2012.

---

[1] The Notice of Appeal Defendant filed on January 16, 2013 (ECF No. 57), incorrectly listed the D.C. Circuit as the Court to which Defendant is cross appealing, instead of the Court of Appeals for the Federal Circuit. In addition, the Notice incorrectly listed Lynne Pettigrew as of counsel – she is no longer with the USPTO.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Acting Chief, Civil Division

BY:    ____/s/_*Mitchell Zeff*_____
MITCHELL P. ZEFF, D.C. Bar # 494066
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Phone: (202) 514-7352
Fax: (202) 514-8780
mitchell.zeff@usdoj.gov

Of Counsel:
Meredith H. Schoenfeld
Joseph G. Piccolo
Brian T. Racilla
Associate Solicitors
United States Patent and Trademark Office

Dated:  January 17, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2013, I caused the foregoing Notice of

Appeal to be served on Plaintiff's attorneys via the court's Electronic Case Filing System (ECF).

/s/

MITCHELL P. ZEFF, D.C. BAR # 494066
Assistant United States Attorney
Judiciary Center Building
555 Fourth St., N.W.
Washington, D.C. 20530
(202) 514-7352

_____

|                          | )  |                                      |
|--------------------------|----|--------------------------------------|
| **NOVARTIS AG, et al.,** | )  |                                      |
|                          | )  |                                      |
| **Plaintiffs,**          | )  |                                      |
|                          | )  |                                      |
| **v.**                   | )  | **Civil Action No. 10-cv-1138 (ESH)**|
|                          | )  |                                      |
| **HON. DAVID J. KAPPOS,**| )  | **(Consolidated)**                   |
|                          | )  |                                      |
| **Defendant.**           | )  |                                      |

_____)

## MEMORANDUM OPINION

Plaintiffs Novartis AG and Novartis Vaccines and Diagnostics, Inc. ("Novartis") have

sued David J. Kappos, the Under Secretary of Commerce for Intellectual Property and the

Director of the U.S. Patent and Trademark Office ("PTO"). Plaintiffs bring this suit under 35

U.S.C. § 154, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, claiming

that defendant improperly determined the amount of patent term adjustment to which they are

entitled. Before the Court are plaintiffs' Motion for Summary Judgment and defendant's Cross

Motion for Summary Judgment. For the reasons set forth below, plaintiffs' motion will be

granted in part and denied in part, and defendant's motion will be granted in part and denied in

part.

## BACKGROUND

### I.      LEGAL FRAMEWORK

Prior to 1994, U.S. patents were granted for a term of seventeen years from the date the

patent issued. In 1994, Congress adjusted the term of a U.S. patent to twenty years from the date

1

the application was filed to bring the U.S. in line with other countries' patent terms. However, because the examination of a patent application often takes more than three years from filing to the issuance of a patent, this meant that many patentees received effective patent terms of less than the historical seventeen-year period. Thus, in 1999, Congress amended the Patent Act by creating patent term adjustments ("PTA") to extend patent terms in response to unreasonable delays in the examination of a patent application. *See* 35 U.S.C. § 154(b).

The Patent Act created several types of PTA, two of which are at issue here. First, a patentee can accrue PTA if the PTO fails to take certain specified actions within fixed windows of time. *See* 35 U.S.C. § 154(b)(1)(A). For example, if the PTO does not issue an office action responding to a patent application within 14 months after the application was filed, the patentee will be awarded one day of PTA for every day until the first office action is issued. *Id.* This type of PTA is known as "A Delay." The PTO notifies the patentee of the amount of A Delay that has been awarded when it issues the Notice of Allowance. Because the Notice of Allowance is sent well before a patent is actually granted, the determination of A Delay is known as a Pre-Issuance Determination.

A second type of PTA accrues if the PTO fails to issue a patent within three years of the filing of the application. *See* 35 U.S.C. § 154(b)(1)(B). This type of PTA is known as "B Delay." Specifically, § 154(b)(1)(B) provides that:

> if the issue of an original patent is delayed due to the failure of the [PTO] to issue a patent within 3 years after the actual filing date of the application in the United States, not including-
>> (i)      any time consumed by continued examination of the application requested by the applicant under section 132(b);
>> (ii)     any time consumed by a proceeding under section 135(a), any time consumed by the imposition of an order under section 181, or any

2

> time consumed by appellate review by the Board of Patent Appeals
> and Interferences or by a Federal court; or
>
> (iii) any delay in the processing of the application by the United States
> Patent and Trademark Office requested by the applicant except as
> permitted by paragraph (3)(C),
>
> the term of the patent shall be extended 1 day for each day after the end of that 3-
> year period until the patent is issued.

*Id.*

     The PTO has promulgated two final rules interpreting the proper calculation of B

Delay under § 154(b)(1)(B).  First, 37 C.F.R. § 1.702(b) states that the patent term shall

be adjusted if the issuance of the patent was delayed due to the failure of the PTO to issue

a patent within three years after the filing date, "but not including: (1) any time consumed

by continued examination of the application under 35 U.S.C. § 1.703(b)."  Second, 37

C.F.R. § 1.703(b) states that the period of adjustment under § 1.702(b) is to be the

number of days beyond three years from the filing date, but not including the number of

days between the filing of a request for continued examination ("RCE") and the date the

patent is issued.  In other words, § 1.703(b) provides that: (1) patentees cannot accrue B

Delay for time consumed by an RCE, regardless of when it was filed, and (2) "time

consumed by" an RCE includes all of the time from the filing of the RCE to the issuance

of the patent.  Because B Delay accrues until the actual date of issuance, the PTO does

not determine the proper amount of B Delay until the patent is granted.

     After determining the proper amount of A and B Delay, the PTO must determine

the extent of any overlap between the two types of delay.  The method of determining

A/B Delay Overlap was changed in response to the Federal Circuit's decision in *Wyeth v.*

*Kappos*, 591 F.3d 1364 (Fed. Cir. 2010).  Prior to *Wyeth*, the PTO interpreted the period

3

of B Delay to include the entire time between the filing of an application and the issuance

of a patent more than three years later.  Thus, if a patent took longer than three years to

issue, any A Delay that occurred during the pendency of the application by definition

overlapped with the period of B Delay, and was not awarded to the patentee as PTA.  As

the Federal Circuit explained, "[u]sing this framework, the PTO use[d] either the greater

of the A delay or B delay to determine the appropriate adjustment, but never combine[d]

the two."  *Wyeth*, 591 F.3d at 1368.  In *Wyeth*, the Federal Circuit held that the PTO's

interpretation of the overlap provision was erroneous; A Delay and B Delay should be

aggregated so long as that aggregation would not require counting the same calendar day

twice.  *See id.* at 1369-70.

After the Federal Circuit's decision in *Wyeth*, the PTO announced that it would not seek

further review of that decision and would implement the court's interpretation of A/B Delay

Overlap when determining the appropriate amount of PTA for issued patents beginning on

March 2, 2010.  (AR166-67.)  The PTO also announced that it would permit recalculation of

PTA for patents issued prior to March 2, 2010, so long as the request for reconsideration was

filed within 180 days of the grant of the patent.  (AR170.)  Thus, only patents that had been

granted within the 180 days prior to that announcement were eligible for a recalculation of their

PTA using the new post-*Wyeth* interpretation.

Because the overlap determination depends on the amount of B Delay, it is also done at

the time the patent is granted.  The final determination of PTA, which factors in just A Delay but

also B Delay and any overlap between A and B Delay, is therefore known as an Issuance

Determination.

4

## II. PROCEDURAL HISTORY

On July 6, 2010, Novartis filed suit, alleging that the PTO had improperly calculated the amount of PTA to which eleven of its patents were entitled. (Complaint [ECF No. 1].) Novartis argued first that the PTO acted improperly in refusing to apply the post-*Wyeth* interpretation of A/B Delay Overlap to patents granted prior to September 2, 2009 ("the *Wyeth* Claim"). Second, Novartis challenged the PTO's interpretation of the effect of an RCE on the determination of B Delay ("the RCE Claim"). On February 16, 2012, this Court ordered that this case be consolidated with three other matters—*Novartis v. Doll*, No. 09-cv-1203, *Novartis v. Kappos*, No. 11-cv-0659, and *Novartis v. Kappos*, No. 11-cv-0821—all of which raise the same legal issues. Given the consolidation of the four cases, the PTA determinations for twenty-three of Novartis' patents are now at issue.

Plaintiffs filed a Motion for Summary Judgment on May 16, 2012. ([Dkt. No. 35] ("Pls.' Mot.").) Defendant then filed a Cross Motion for Summary Judgment and Opposition to plaintiffs' motion on June 18, 2012. ([Dkt. No. 38] ("Def.'s Mot.").) On July 18, 2012, plaintiffs filed an Opposition to defendant's Cross Motion and a Reply to defendant's Opposition to its Motion. ([Dkt. No. 40] ("Pls.' Reply").) And finally, on August 20, 2012, defendant filed a Reply to plaintiff's Opposition. ([Dkt. No. 42] ("Def.'s Reply").)

## ANALYSIS

## I. LEGAL STANDARDS

### A. Judicial Review of Patent Term Adjustments

The APA provides judicial review of an agency action to a party who has suffered a legal wrong because of that action. 5 U.S.C. § 702. The APA gives the court authority to "decide all

relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  It further provides that the reviewing court shall set aside an agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations."  *Id.*

The arbitrary and capricious standard "presumes the validity of agency action, requiring [the court] to determine whether the agency has considered the relevant factors and 'articulate[d] a rational connection between the facts found and the choice made.'"  *AT&T Corp. v. FCC*, 220 F.3d 607, 616 (D.C. Cir. 2000) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The court "may reverse only if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment."  *Kisser v. Cisneros*, 14 F.3d 615, 619 (D.C. Cir. 1994).

### B.      Motion for Summary Judgment

Normally, a motion for summary judgment under Rule 56 shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "In a case involving review of a final agency action under the [APA], however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record."  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citation omitted).

"Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)).  Thus, "when an agency action is challenged" solely with "arguments about the legal conclusion to be drawn about the agency action," then the case on review presents only a question of law and can be resolved on the administrative record pursuant to a motion for summary judgment.  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  In that instance, a "district court[ ] reviewing agency action under the APA's arbitrary and capricious standard do[es] not resolve factual issues, but operate[s] instead as [an] appellate court[ ] resolving legal questions."  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996).

In this case, the only issue for review is a legal question as to whether the PTO's determination of PTA for each of Novartis' patents was a valid and appropriate exercise of agency discretion.

## C.    Standard of Review

In answering this question, it is necessary to determine what level of deference the PTO's determination is entitled to.  Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), "where Congress has authorized an agency to promulgate substantive rules under a statute it is charged with administering," the court "must uphold the agency's interpretation of an ambiguity or omission in that statute if the interpretation is a reasonable one."  *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1549 (Fed. Cir. 1996) (citing *Chevron*, 467

U.S. at 842-45). However, the Federal Circuit has previously determined that the PTO does not have the authority to issue substantive rules, only procedural regulations regarding the conduct of proceedings before the agency. *See Merck*, 80 F.3d at 1549-50. Indeed, 35 U.S.C. § 154(b)(3)(A) limits the PTO's authority to prescribing "regulations establishing procedures for the application for and determination of patent term adjustments." 35 U.S.C. § 154(b)(3)(A). Thus, the PTO's determination is not entitled to *Chevron* deference. *See Merck*, 80 F.3d at 1549-50; *Wyeth v. Dudas*, 580 F. Supp. 2d 138, 141 (D.D.C. 2008).

Instead, the PTO is only entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 140; *see also Merck*, 80 F.3d at 1550. In other words, a court will only defer to an agency interpretation if, among other things, "the agency's position constitutes a reasonable conclusion as to the proper construction of the statute." *See Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352, 1366 (Fed. Cir. 2005).

## II.    TIMELINESS

Challenges to PTA determinations are governed by 35 U.S.C. § 154(b)(4)(A). That section provides:

> An applicant dissatisfied with a determination made by the Director under paragraph (3) shall have remedy by a civil action against the Director filed in the United States District Court for the District of Columbia within 180 days after the grant of the patent.[1]

---

[1] For complaints filed on or after September 16, 2011, the U.S. District Court for the Eastern District of Virginia now has jurisdiction over actions under 35 U.S.C. § 154(b). Pub. L. 112-29 at § 9(a), 125 Stat. 284, 316.

35 U.S.C. § 154(b)(4)(A). Defendant does not dispute that timely complaints were filed with respect to three of the Novartis Patents—U.S. Patent Nos. 7,807,155 ("the '155 patent"), 7,968,518 ("the '518 patent"), and 7,973,031 ("the '031 patent"). (Def.'s Mot. at 10.) However, the PTO asserts that because the complaints relating to the remaining patents were filed more than 180 days after the grant of each of those patents, Novartis is foreclosed from seeking additional PTA for those patents. (*Id.* at 10-11.)

As an initial matter, Novartis asserts that the 180-day limitation of § 154(b)(4)(A) does not apply to its claims. By its terms, § 154(b)(4)(A) applies to determinations "under paragraph (3)" of that section. Novartis asserts that § 154(b)(3) governs only Pre-Issuance PTA Determinations, meaning determinations of A Delay. (Pls.' Mot. at 31-32.) Novartis points to several portions of that subsection to support its position. For example, § 154(b)(3)(B)(i) states that: "the Director shall . . . make a determination of the period of any patent term adjustment under this subsection, and shall transmit a notice of that determination *with the written notice of allowance* under section 151." 35 U.S.C. § 154(b)(3)(B)(i) (emphasis added). Because neither B Delay nor A/B Overlap has been determined at the time a Notice of Allowance is issued, Novartis contends that this section should not apply to challenges to those determinations. (*Id.*) Similarly, § 154(b)(3)(D) states that the Director "shall proceed to grant the patent *after* completion of the Director's determination of a patent term adjustment under the procedures established under this subsection." 35 U.S.C. § 154(b)(3)(D) (emphasis added). In Novartis' view, the fact that the statute suggests that the PTA determination must be made prior to the grant of the patent indicates that it relates only to Pre-Issuance Determinations. (*Id.* at 32.) Thus, because no Pre-Issuance PTA Determinations are implicated here, Novartis argues that 35

U.S.C. § 154(b)(3) is irrelevant, and the 180-day limitations period of 35 U.S.C. § 154(b)(4)(A) does not apply. Instead, according to Novartis, the general six-year statute of limitations of the APA (*see* 28 U.S.C. § 2401(a)) applies to Novartis' appeal of Issuance PTA Determinations. (*Id.* at 34.)

The Court disagrees. Section 154(b)(3) is entitled "Procedures for patent perm adjustment determination" and is the only section of the statute to address the PTO's procedures for determining PTA. From its plain language, it is clearly intended to relate to all PTA determinations, regardless of when they occur. Indeed, the very language Novartis points to— that the Director "shall proceed to grant the patent after completion of the Director's determination"—clearly requires that the Director make a full determination of all types of PTA because both A Delay and B Delay (as well as any overlap between the two) must be determined before the patent is granted.

In addition to being consistent with the plain meaning of the statute, this interpretation avoids absurd results. Congress clearly intended to include strict controls on judicial review of PTA determinations. Under Novartis' interpretation, only Pre-Issuance Determinations would be subject to those controls, while the final, complete PTA determinations that accompany an issued patent would not. Instead, a patentee would have 180 days in which to challenge the calculation of A Delay but six years in which to challenge B Delay and A/B Delay Overlap.

In reaching this conclusion, this Court is persuaded by the recent opinion in *Janssen Pharmaceutica N.V. v. Kappos*, 844 F. Supp. 2d 707 (E.D. Va. 2012), that 35 U.S.C. § 154(b)(4)(A) provides the exclusive means for judicial challenges to the PTO's PTA determinations. *Id.* at 713. That court held:

10

> [I]n a case in which a patentee is challenging the number of days of PTA calculated by the USPTO, whether that calculation occurred before the patent was issued or afterwards, such a decision is governed by §§ 154(b)(3) and (b)(4)(A). In other words, any challenge to a PTA determination is governed by § 154(b)(4)(A).

*Id.* The court reasoned that a contrary holding would be "entirely inconsistent with the Congressional intent plain on the face of the statute—to strictly limit the forum and timing for seeking judicial review of these very specific USPTO decisions." *Id.* As such, the 180-day limitation prescribed by that section applies to the PTA determinations at issue here.

### A.    Ordinary Tolling

Judicial review of agency actions is ordinarily tolled until the agency action is final. *See Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002) (citing *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 284 (1987)). "A request for administrative reconsideration renders an agency's otherwise final action non-final with respect to the requesting party." *Clifton*, 294 F.3d at 110 (citing *United Transp. Union v. Interstate Commerce Comm'n*, 871 F.2d 1114, 1116 (D.C. Cir. 1989)). Thus, judicial review of an agency action must be tolled during the period of agency reconsideration. As the Supreme Court explained in *Locomotive Engineers*:

> [W]here a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency (and within the period allotted for judicial review of the original order) . . . the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts directly after the petition for reconsideration is denied.

482 U.S. at 279.

With respect to U.S. Patent No. 7,470,792 ("the '792 patent"), Novartis filed a petition for PTA reconsideration with the PTO within two months of issuance, as directed by 37 C.F.R. §

11

1.705(d), raising the same claim that is now before this Court. Within 180 days of the PTO's denial of reconsideration (but more than 180 days after the issuance of the patent), Novartis filed suit in this court. Thus, Novartis argues that the 180-day limitation period should have been tolled by its filing of a petition for reconsideration, rendering its claim with respect to the '792 patent timely.[2]

The PTO asserts that the ordinary tolling rule does not apply to § 154(b)(4)(A). First, the PTO argues that applying the normal tolling rule to § 154(b)(4)(A) would read out the language "after the grant of the patent" from the statute. (Def.'s Mot. at 27.) However, it is well established that "a statutory provision setting the limitations period is *not* incompatible with a tolling rule." *Bristol-Myers Squibb Co. v. Kappos*, 841 F. Supp. 2d 238, 243, *motion for reconsideration denied*, 2012 WL 4127636 (D.D.C. Sept. 20, 2012). Indeed, this Circuit has applied the ordinary tolling rule to numerous statutes providing for specific limitations periods that are triggered by specified dates. *See, e.g.*, *Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 920-21 (D.C. Cir. 1998) (tolling 90-day limitations period beginning from the date of the challenged promulgation or denial); *Los Angeles SMSA Ltd. P'ship v. FCC*, 70 F.3d 1358, 1359 (D.C. Cir. 1995) (tolling a 30-day limitation period beginning on "the date upon which public notice is given of the decision or order complained of"). Thus, the mere fact that § 154(b)(4)(A)

---

[2] The PTO correctly points out that Novartis did not allege that ordinary tolling applied in its Second Amended Complaint. (Def.'s Mot. at 26 n. 10.) Although it remains an "open question" in the D.C. Circuit as to "whether the Federal Rules permit parties to impliedly consent to 'try' issues not raised in their pleadings through summary judgment motions," the Court will follow the majority of circuits that do allow constructive amendment of the pleadings under Rule 15(b) through summary judgment motions. *See Turner v. Shinseki*, 824 F. Supp. 2d 99, 122 n.23 (D.D.C. 2011) (collecting cases).

12

sets a specific date from which the 180-day limitation period is to run—the date the patent is granted—does not render the general tolling rule inapplicable.

Next, the PTO argues that the language of § 154(b)(4)(A) suggests that Congress clearly intended "to depart from the ordinary judicial treatment of agency orders under reconsideration." (Def.'s Mot. at 27-28 (quoting *Stone v. INS*, 514 U.S. 386, 393 (1995)).)  Specifically, the PTO argues that by tying the 180-day limitation to the date of patent grant and expressly providing that the issuance of the patent should proceed regardless of any reconsideration sought by the applicant, *see* 35 U.S.C. § 154(b)(3)(D), Congress clearly intended to override the application of the general tolling rule.  (*Id.* at 28.)

The same argument by the PTO was rejected in *Bristol-Myers Squibb*, 841 F. Supp. 2d at 244-45.  The Court concluded defendant's arguments do not "support a conclusion that Congress intended for the ordinary tolling rule not to apply to Section 154(b)(4)(A)."  *Id.* at 244.  To the contrary, § 154(b)(4)(A) expressly states that Chapter 7 of Title 5—which includes the general tolling rule—applies to any actions arising under that section, a fact this Court recently noted "indicates that Congress affirmatively intended for the tolling rule to apply to judicial review of patent term adjustment determinations."  *Bristol-Myers Squibb*, 2012 WL 4127636, at \*6.  Thus, nothing about § 154(b)(4)(A) "direct[s] this Court to take any action inconsistent with the normal tolling rule."  *Bristol-Myers Squibb*, 841 F. Supp. 2d at 245.

Because the Court holds that the general tolling rule applies, and because Novartis filed its complaint with respect to the '792 patent within 180 days after the denial of its petition for reconsideration, Novartis' claim with respect to that patent was timely filed.

13

## B.    Equitable Tolling

With respect to the nineteen remaining patents that were neither timely filed nor susceptible to ordinary tolling, Novartis argues that the 180-day limitations period should be equitably tolled.

The Court must first determine if § 154(b)(4)(A) is susceptible to equitable tolling. That question turns on whether the statute is jurisdictional in nature. The law on what constitutes a "jurisdictional" statute is, to say the least, far from clear. *See, e.g.*, *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("Recognizing our 'less than meticulous' use of the term in the past, we have pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not.") (quoting *Kontrick v. Ryan*, 540 U.S. 442, 454-55 (2004)); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 183 (D.C. Cir. 2012) ("In recent years, the terminology of jurisdiction has been put under a microscope at the Supreme Court. And the Court has not liked what it has observed—namely, sloppy and profligate use of the term 'jurisdiction' by lower courts and, at times in the past, the Supreme Court itself.") (Kavanaugh, J., dissenting).

In light of these recent admonishments to construe the meaning of "jurisdictional" narrowly, it is perhaps more prudent to conclude that § 154(b)(4)(A) should be viewed as a "claim-processing rule"—one that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," *Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011), and therefore, it is entitled to a "rebuttable presumption in favor of equitable tolling." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010) (internal

quotation marks omitted).  The Court, however, need not resolve this knotty question, because it finds that § 154(b)(4)(A) should not be equitably tolled under the circumstances of this case.

Equitable tolling is available to a petitioner who has been diligent in pursuing his rights, but for whom some extraordinary circumstance stood in the way and prevented timely filing. *Holland*, 130 S. Ct. at 2562.  The decision to equitably toll a statute of limitations is made on a "case-by-case" basis depending on the facts of the case.  *Id.* at 2563.

With respect to its *Wyeth* Claim, Novartis argues first that it lacked knowledge of its claim until the Federal Circuit's decision on January 7, 2010, in *Wyeth* changed the law with respect to A/B Delay Overlap.  (Pls.' Mot. at 48-49.)  Additionally, Novartis argues that it reasonably relied on the PTO's longstanding and consistent use of its pre-*Wyeth* method of calculating A/B Delay Overlap; according to Novartis, up until the *Wyeth* decision forced the PTO to use the correct interpretation of A/B Delay Overlap, Novartis reasonably believed that it would have been futile to file a lawsuit appealing the PTO's PTA determinations under that method of calculation.  (*Id.*)  Thus, Novartis suggests that the 180-day limitation should have been equitably tolled until the PTO's January 20, 2010 announcement that it would not seek further appellate review of the Federal Circuit's *Wyeth* decision.

With respect to its RCE Claim, Novartis goes even further, asserting that because no federal court has yet ruled on the viability of this claim, the statute of limitations has not yet begun to run.  (*Id.* at 49.)  Novartis insists that it was not until this claim was raised by Abbott Laboratories in *Abbott v. Kappos*, 10-cv-1853 (D.D.C.), filed on October 29, 2010, that Novartis even became aware that this was a possible claim.  (*Id.*)

Novartis' arguments are unpersuasive. In effect, Novartis' position amounts to a contention that the statute of limitations should not begin to run until such time as a federal court has actually ruled on and upheld the very claims they seek to pursue. But of course, Novartis was free to raise the same issues that Wyeth and Abbott Laboratories raised in their lawsuits within the 180 days after their patents were granted. As this Circuit has previously noted:

> The only sure way to determine whether a suit can be maintained is to try it. The application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor cannot toll or suspend the running of the statute by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums. These suits were not commenced until through the labor of others the way was made clear.

*Commc'ns Vending Corp. of Arizona, Inc. v. FCC*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting *Fiesel v. Bd. of Educ.*, 675 F.2d 522, 524-25 (2d Cir. 1982)). It is of no moment that the PTO had consistently applied its pre-*Wyeth* interpretation of A/B Delay Overlap; the question is not what the PTO would have done in response to a request for reconsideration, but rather what a federal court would have done in reviewing the PTO's interpretation. That was both unasked and unanswered until Wyeth raised exactly this issue in its lawsuit, just as Novartis was free to do at any point within 180 days of its patents being granted.

Regardless, contrary to Novartis' argument, a change in law is not such an extraordinary circumstance as to justify the application of equitable tolling. *See Nihiser v. White*, 211 F. Supp. 2d 125, 130-31 (D.D.C. 2002). Indeed, this case is analogous to *Venture Coal Sales Co. v. United States*, 370 F.3d 1102 (Fed. Cir. 2004), in which Venture Coal argued that its injury from the Coal Sales Tax was "inherently unknowable" until the tax was held unconstitutional in *Ranger Fuel Corp. v. United States*, 33 F. Supp. 2d 466 (E.D. Va. 1998). *See Venture Coal*, 370

16

F.3d at 1107. The Federal Circuit rejected that argument and noted that, just like Novartis here, Venture Coal argued "not that it lacked *sufficient facts* on which it could sue, but rather it did not know the *legal theory* on which its refund claim might succeed." *Id.*; *see also Nihiser*, 211 F. Supp. 2d at 131 ("[A]ll the relevant facts were known. It was the meaning of the law that was misunderstood.") (quoting *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1572 (Fed. Cir. 1993)). The court pointed out that "Venture Coal was entitled to challenge the Coal Sales Tax when it paid the taxes as much as were the plaintiffs in *Ranger Fuel*." *Venture Coal*, 370 F.3d at 1106.

None of the cases relied on by Novartis undercut *Venture Coal*. In each case, the "change in circuit precedent" that was found sufficient to justify equitable tolling related to the statute of limitations itself; in other words, the law changed in such a way that the petitioners' habeas filings, which would otherwise have been considered timely, no longer were. *See, e.g.*, *Shelton v. Purkett*, 563 F.3d 404, 407 (8th Cir. 2009) ("Because Shelton's petition was just barely timely under *Nichols*, it is clear that under the *Riddle* rule . . . Shelton's petition was untimely."); *Griffin v. Rogers*, 399 F.3d 626, 636 (6th Cir. 2005) ("This 30-day window was adopted by the *Palmer* Court in January 2002 . . . [y]et Griffin failed to file within this 30-day window in October 1998, over three years before the time frame was adopted in this circuit."); *York v. Galetka*, 314 F.3d 522, 528 (10th Cir. 2003) (allowing equitable tolling because petitioner filed his habeas petition over a year before the Supreme Court decision holding that pendency of federal habeas petition does *not* toll statute of limitations); *Harris v. Carter*, 515 F.3d 1051, 1055-56 (9th Cir. 2008) ("[Harris] filed successive petitions for state post-conviction relief while ensuring that enough time would remain to file a federal habeas petition under the

17

then-existing *Dictado* rule. The Supreme Court's overruling of the *Dictado* rule made it impossible for Harris to file a timely petition."). In these and other similar cases, equitable tolling was justified because the unforeseeable change in law made it impossible for the petitioners to file their petitions in a timely fashion. That is a far cry from this case. Novartis benefited from the change in law but it could have (as Wyeth did) attempted to effectuate that very change through a timely challenge to the PTO's PTA determinations.

In light of these considerations, even assuming that § 154(b)(4)(A) is not jurisdictional, the facts in this case do not justify the application of the equitable tolling doctrine to Novartis' nineteen untimely complaints.

### C. Discovery Rule

As its final attempt to skirt the 180-day limitation of § 154(b)(4)(A), Novartis argues that its untimely complaints should be permitted under the discovery rule. The "discovery rule" provides that "a cause of action accrues when the injured party discovers—or in the exercise of due diligence should have discovered—that it has been injured." *Hardin v. Jackson*, 625 F.3d 739, 743 (D.C. Cir. 2010) (quoting *Nat'l Treasury Emps. Union v. FLRA*, 392 F.3d 498, 501 (D.C. Cir. 2004)).

This is nothing more than a rehash of Novartis' equitable tolling argument. Novartis claims that it did not discover that it had suffered an injury until a definitive federal court ruling was issued on the merits of its legal claims. (*See* Pls.' Mot. at 53-54.) For its *Wyeth* Claim, that ruling came from the Federal Circuit in January 2010. For its RCE Claim, however, no such court ruling has occurred to date and so Novartis suggests that it has not yet discovered any injury resulting from the PTO's actions.

18

As is the case with the equitable tolling doctrine, it can be debated as to whether the discovery rule even applies to § 154(b)(4)(A). The PTO suggests that because Congress specified that the statute of limitations would begin to run as of the date the patent was granted, Congress implicitly rejected the use of a discovery rule, whereby the statute of limitations would begin to run when the injury is first discovered by the injured party. (Def.'s Mot. at 24-25.)

However, as previously discussed, the Court need not resolve this question because it finds that the discovery rule, even if available under § 154(b)(4)(A), would not be applicable to this case. The injury that Novartis alleges is a procedural one—that the PTO misapplied the statutory procedure for PTA determination and harmed Novartis' interest in obtaining the full patent term to which it is entitled. However, as of the date that each patent was granted, Novartis knew the amount of PTA it had been awarded and knew what procedure the PTO had used in making that determination; all of the *facts* underlying Novartis' injury were both knowable and in fact *known* by Novartis as of that date. Thus, the 180-day limitations period began to run on that date, and Novartis' failure to challenge the PTA determinations within that 180-day period rendered nineteen complaints untimely.

The Court will now turn to the merits relating to the four patents (the '155, '518, '031, and '792 patents) as to which Novartis has raised timely claims.

## III.    RCE CLAIM

For three of the four timely-challenged patents, Novartis asserts that the PTO improperly calculated the amount of B Delay to which it was entitled under § 154(b)(1)(B). That section provides:

> [I]f the issue of an original patent is delayed due to the failure of the [USPTO] to
> issue a patent within 3 years after the actual filing date of the application in the

> United States, not including—(i) any time consumed by continued examination of the application requested by the applicant under section 132(b) . . . the term of the patent shall be extended 1 day for each day after the end of that 3-year period until the patent is issued.

35 U.S.C. § 154(b)(1)(B). As explained above, the PTO has promulgated a regulation interpreting § 154(b)(1)(B) as meaning: (1) that any time consumed by an RCE is excluded from the B Delay determination, even if it occurs after the three-year window has closed; and (2) that "time consumed by" an RCE extends until the issuance of the patent. *See* 37 C.F.R. § 1.703(b)(1). Novartis challenges both of these interpretations. Because the Court concludes that the PTO erred in excluding from B Delay time consumed by an RCE filed after the three-year window has closed, the Court need not address Novartis' alternative argument regarding the proper interpretation of "time consumed by" an RCE.

The PTO and Novartis disagree about the proper interpretation of § 154(b)(1)(B). Both parties agree that the statutory provision has two parts: a "trigger" provision and a "remedy" provision. First, it identifies a three-year period running from the date of the filing of the application. If a patent is not issued within that three-year period—the "trigger"—then the statute provides for a "remedy." The parties disagree, however, about whether the "not including" clause applies to the trigger or to the remedy.

The PTO has interpreted the "not including" clause to be a part of the remedy provision; in other words, if a patent has not issued within three years of its filing date, the patentee shall be entitled to a day-for-day patent term adjustment for every day until the patent issues, but "not including" any time consumed by an RCE. (*See* Def.'s Mot. at 33.) Novartis insists that the clause applies to the trigger. Under Novartis' view, if the patent is not issued within the three-year period, "not including" time consumed by an RCE, then the patentee is entitled to the day-

20

for-day remedy. (Pls.' Mot. at 21-22.) In other words, the filing of an RCE tolls the running of the three-year clock, but if the three-year clock runs out, the applicant would be entitled to a day-for-day patent term adjustment for every day until the patent issues, regardless of what activity occurred during that time—even an RCE. (*Id.*)

This exact issue was recently decided by the Eastern District of Virginia in *Exelixis, Inc. v. Kappos*, 2012 WL 5398876 (E.D. Va. Nov. 1, 2012). The issue in that case—as here—was "whether § 154(b)(1)(B) requires that, or even addresses whether, any PTA be reduced by time attributable to an RCE where, as here, the RCE is filed *after* the expiration of the three year guarantee period specified in that statute." *Id.* at *2 (emphasis added). Like Novartis, Exelixis argued that "the PTO improperly calculated B delay by not providing a day for day PTA for time consumed by the RCE filed after the three year period had expired." *Id.* at *5. And just as it did in this case, the PTO argued that "the time consumed by an RCE is always excluded from the calculation of B delay because, in the PTO's view, any time consumed by an RCE is subtracted from the PTA awarded under subparagraph (B), regardless of when the RCE is filed." *Id.*

Judge Ellis agreed with Exelixis' interpretation. First and foremost, he concluded that the plain and unambiguous language of § 154(b)(1)(B) makes clear that the three-year clock is tolled by the filing of an RCE, but that "once the three year clock has run, PTA is to be awarded on a day for day basis regardless of subsequent events." *Id.* at *6. In other words, the "not including" language of § 154(b)(1)(B) "clearly and unambiguously modifies and pertains to the three year period and does not apply to, or refer to, the day for day PTA remedy." *Id.*

Second, Judge Ellis noted that the plain meaning of § 154(b)(1)(B) was supported by that section's structure and purpose. Specifically, the statute is designed to provide compensatory

PTA for delays attributable to the PTO, while reducing PTA for delays attributable to the applicant. However, the filing of an RCE is not one of the listed categories of "applicant delay" provided for in § 154(b)(2)(C). Thus, Judge Ellis concluded that it was erroneous for the PTO to punish applicants for filing RCEs. *Id.* at *6-7.

Judge Ellis also thoroughly dispensed with the very arguments that the PTO has raised in this case. For example, in response to the PTO's insistence that its construction of § 154(b)(1)(B) should be entitled to *Skidmore* deference, Judge Ellis pointed out that "*Skidmore* deference is unwarranted, when, as here, the statute is unambiguous." *Id.* at *8. Similarly, he flatly rejected the PTO's argument that the plain language of § 154(b)(1)(B) renders the subsequent section—§ 154(b)(1)(C)—superfluous. *Id.* at *8 n. 16. And finally, Judge Ellis addressed the PTO's argument that Exelixis' proposed construction could lead to disparate treatment of some similarly-situated applicants, depending on which side of the three-year line the applicant files his RCE on. *Id.* In doing so, he reiterated the Federal Circuit's admonishment that, "[r]egardless of the potential of the statute to produce slightly different consequences for applicants in similar situations, this court does not take upon itself the role of correcting all statutory inequities." 591 F.3d at 1370. Judge Ellis also noted that it is within the PTO's power to minimize this disparate treatment by issuing timely notices of rejection such that RCEs must be filed within the three-year period. *Exelixis*, 2012 WL 5398876, at *8.

This Court finds Judge Ellis' well-reasoned opinion to be persuasive. It will therefore adopt his rationale for concluding that the PTO's interpretation is contrary to the plain and unambiguous language of § 154(b)(1)(B), and that it contravenes the structure and purpose of the statute.

22

Additionally, the Court notes one further consideration, not addressed by the parties in this case but raised by Abbott Biotherapeutics in *Abbott v. Kappos*, 10-cv-1853 (D.D.C.) that helps to bolster the conclusion reached here. Abbot notes that the PTO's position here—as embodied in 37 C.F.R. § 1.703(b)—is in conflict with another of the PTO's regulations. (*See* Plaintiff's Reply at 6-7, *Abbott v. Kappos*, No. 10-1853, July 18, 2012 [ECF No. 31].) Specifically, § 1.703(b) applies the "not including" language of § 154(b)(1)(B) to the "remedy" provision of that section. It states that:

> The period of adjustment under § 1.702(b) is the number of days, if any, in the prior beginning on the day after the date that is three years after the date on which the application was filed under 35 U.S.C. 111(a) . . . , but not including the sum of the following periods: (1) The number of days, if any, in the period beginning on the date on which an [RCE] was filed and ending on the date the patent was issued.

37 C.F.R. § 1.703(b). That section is therefore consistent with the PTO's position in this litigation: the "trigger" occurs if a patent is not issued within three years after the application's filing date, and the "remedy" consists of day-for-day PTA after that time, but does not include any time consumed by an RCE. (Def.'s Mot. at 32-33.)

However, that regulation is in tension with the immediately preceding PTO regulation, 37 C.F.R. § 1.702(b), which applies the "not including" language of § 154(b)(1)(B) to the "trigger" provision of that section and considers RCE in determining whether the three-year clock has run. It states:

> [T]he term of an original patent shall be adjusted if the issuance of the patent was delayed due to the failure of the Office to issue a patent within three years after the date on which the application was filed under 35 U.S.C. 111(a) . . . , but not including: (1) Any time consumed by continued examination of the application under 35 U.S.C. 132(b).

23

37 C.F.R. § 1.702(b). In other words, § 1.702(b) adopts the plain meaning of § 154(b)(1)(B), which is advocated by Novartis but disputed by the PTO in this case. It unambiguously provides that the three-year window will be tolled during the filing of an RCE, and says nothing about the remedy to be applied if and when that three-year mark is triggered. Thus, if both regulations were to be applied as written, time consumed by an RCE would apply to *both* the trigger and the remedy provisions of the statute, and would effectively result in the double-counting of the "not including" clause of § 154(b)(1)(B).

In response to Abbott's argument, the PTO appears to offer no explanation of the inconsistency between § 1.702(b) and its position in this litigation, or the inconsistency between § 1.702(b) and § 1.703(b). Instead, the PTO ignores both the plain language of the statute and the text of § 1.702(b) and advocates an inconsistent interpretation of § 1.703(b). These apparent inconsistencies further bolster the Court's view that the PTO's interpretation of § 154(b)(1)(B) is contrary to law.

In sum, the PTO's interpretation of § 154(b)(1)(B) contravenes the plain meaning of the statutory language and therefore must be set aside as "not in accordance with law" and "in excess of statutory . . . authority" pursuant to 5 U.S.C. § 706(2)(A) and (C).

## IV.    *WYETH* CLAIM

In *Wyeth*, the Federal Circuit held that the PTO's interpretation of § 154(b)(2)(A) regarding the calculation of A/B Delay Overlap was improper. *See* 591 F.3d at 1372. After the Federal Circuit's ruling, the PTO announced that it would not seek further review of the decision and would use the proper method of calculating A/B Delay Overlap both going forward and for patents issued before March 2, 2010, so long as the request for recalculation was filed within 180

24

days of the issuance of the patent.[3]  (AR166-175).  Novartis argues that the PTO's decision not

to apply the post-*Wyeth* calculation method to the patents issued before September 2, 2009 was

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  (Pls.'

Mot. at 17-18.)  Although Novartis initially alleged that eleven of the patents at issue in this case

were entitled to additional PTA because of the PTO's failure to apply *Wyeth*, only one of those

patents—the '792 patent—was timely challenged in this Court.

      As an initial matter, it is noteworthy that the PTO failed to respond to Novartis' *Wyeth*

claim, so the Court may treat this argument as conceded.  *See Day v. D.C. Dep't of Consumer &*

*Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002).

      Regardless, under the PTO's own policy, the *Wyeth* method of calculating A/B Delay

Overlap should have been applied to the '792 patent.  Specifically, on March 10, 2010, the PTO

wrote a letter to the Patent Public Advisory Committee in which it explained its position on the

application of *Wyeth* to previously-issued patents.  The PTO explained:

> The USPTO is acting consistent with the judicial review provisions of 35 U.S.C.
> § 154(b)(4) in limiting patent term adjustment recalculations to patentees who
> either:  (1) filed a request for patent term adjustment recalculation that has not yet
> been decided within the 180-day period in 35 U.S.C. § 154(b)(4); or (2) are
> currently engaged in a challenge, in the USPTO *or the courts*, to the USPTO's
> patent term adjustment determination that was commenced within the 180-day
> period in 35 U.S.C. § 154(b)(4).

---

[3] Novartis asserts that this effectively set the cut-off date for recalculation at September 2, 2009.
However, it appears to the Court that the post-*Wyeth* interpretation was actually available to
patents issued on or after August 1, 2009.  The policy discussed above was announced in the
Federal Register on February 1, 2010; thus, for any patent issued on or after August 1, 2009 (180
days prior to that announcement), the patentee would have been able to seek reconsideration of
its PTA determination.  Regardless, the PTO has not disputed Novartis' characterization of its
policy.  Moreover, only one of the patents at issue in this case was granted in the window
between August 1 and September 2, 2009—U.S. Patent No. 7,576,221—and as the challenge to
that patent was not timely filed, this appears to be a distinction without a difference.

(AR183 (emphasis added).)  Novartis first filed a complaint in this Court regarding the '792 patent on June 30, 2009.  (*See Novartis v. Doll*, 09-1203 [ECF No. 1] (D.D.C. June 30, 2009).)  As explained above, although that complaint was not filed within 180 days of the issuance of the '792 patent, it was filed within 180 days of the PTO's denial of its request for reconsideration.  Thus, under normal tolling rules, which this Court has held apply to § 154(b)(4), at the time of the Federal Circuit's *Wyeth* decision, Novartis was "currently engaged in a challenge, in . . . the courts, to the USPTO's patent term adjustment determination that was commenced within the 180-day period in 35 U.S.C. § 154(b)(4)."  (AR183.)  The PTO's refusal—with no explanation whatsoever—to follow its own policy and apply *Wyeth* to the '792 patent contravenes the APA.  In particular, the PTO failed to consider the relevant factors and to "articulate[] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" as required by the arbitrary and capricious standard.  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

In addition to violating its own policy, the PTO's refusal to apply *Wyeth* to the '792 patent is contrary to well-established law.  The '792 patent was issued on December 30, 2008, a full two months after the district court opinion in *Wyeth*.  580 F. Supp. 2d 138.  Novartis sought agency reconsideration of its PTA determination in February 2009, in part based on the district court's *Wyeth* ruling.  (A1011-14.)  In June 2009, the PTO declined to apply the *Wyeth* method of calculating overlap to the '792 patent.  (A1015-21.)  This was erroneous.  The Supreme Court has made it clear that it is "error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so."  *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540 (1991).  The district court's *Wyeth* opinion was applied retroactively to Wyeth;

Wyeth's patent terms were adjusted in accordance with the newly-announced rule in that case. Thus, when Novartis filed for reconsideration almost five months later, the PTO abused its discretion by refusing to calculate Novartis' patent consistently with the method adopted in *Wyeth*. Its decision to do so "violate[d] the principle of treating similarly situated parties the same." *Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995).

For these reasons, the Court finds that the PTO erred in not applying either this Court's or the Federal Circuit's *Wyeth* decision to the '792 patent.

## V.     FIFTH AMENDMENT TAKINGS CLAIM

As its final argument, Novartis asserts that by applying its erroneous interpretations of § 154(b)(1)(B), the PTO deprived Novartis of its property interest in its patent term without compensation in violation of the Takings Clause of the Fifth Amendment. (Pls.' Mot. at 54.)

With respect to the nineteen patents for which Novartis did not timely challenge the PTA determinations under § 154(b)(4)(A), this argument is untimely and cannot now be raised.

Moreover, the Court need not address this argument as it relates to the remainder of Novartis' patents. With respect to Novartis' RCE Claim, this argument is moot, as the Court has already ordered the very remedy that Novartis seeks. Specifically, this Court ruled that the PTO's refusal to award B Delay for time consumed by an RCE filed after the three-year deadline was erroneous and ordered the PTO to recalculate the PTA determinations for three of Novartis' patents. (*See supra* Section III.) Similarly, the Court has already ruled that the PTO acted arbitrarily and capriciously in not applying the *Wyeth* method of calculating A/B Delay Overlap to the '792 patent, and has ordered the PTO to recalculate the PTA determinations for that patent.

27

(*See supra* Section IV.)  Thus, the Court need not determine whether either of the PTO's errors amounted to a constitutional violation.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is granted in part and denied in part, and defendant's motion for summary judgment is granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  November 15, 2012

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )

**NOVARTIS AG, et al.,**               )

                                )

                    **Plaintiffs,**     )

                                )

           **v.**                    )         **Civil Action No. 10-1138 (ESH)**

                                )

**HON. DAVID J. KAPPOS,**        )         **(Consolidated)**

                                )

                    **Defendant.**    )
_____)

**ORDER**

For the reasons stated in the accompanying Memorandum Opinion [ECF No. 49], it is hereby

**ORDERED** that plaintiff's Motion for Summary Judgment [ECF No. 35] is **GRANTED IN PART** and **DENIED IN PART**, and defendant's Cross-Motion for Summary Judgment [ECF No. 38] is **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that plaintiffs' claims with respect to United States Patent Nos. 6,656,957, 6,878,721, 7,081,532, 7,097,827, 7,098,325, 7,112,673, 7,253,257, 7,265,089, 7,323,451, 7,348,353, 7,423,148, 7,442,388, 7,470,709, 7,516,741, 7,534,890, 7,576,221, 7,687,637, 7,696,216, and 7,776,851 are **DISMISSED** as untimely; and it is further

**ORDERED** that United States Patent Nos. 7,470,792, 7,807,155, 7,968,518, and 7,973,031 are each hereby **REMANDED** to the U.S. Patent & Trademark Office for recalculation of patent term adjustment in a manner consistent with the accompanying opinion.

1

**SO ORDERED**.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   November 15, 2012

2